UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARY LESTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:04CV00098 ERW/AGF |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Mary Lester's applications for disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C. § 401, et seq., and Supplemental Security Income (SSI) under Title XVI of the SSA, § 1381, et seq. The action was referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

Plaintiff, who was born on December 12, 1975, applied for disability benefits and SSI on June 13, 2003, claiming a disability onset date of April 15, 2002, due to a ruptured disc in her back and numbness in her (left) leg and foot. Her applications were denied initially, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on May 11, 2004, at which Plaintiff, represented by counsel, and a vocational expert testified. The ALJ issued a decision on July 1, 2004, finding that

there were available jobs Plaintiff could perform, and that she was therefore not disabled as defined by the SSA.  The Appeals Council of the Social Security Administration denied Plaintiff's request for review.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony at the hearing regarding her pain and, as a result, improperly relied upon the vocational expert's answer to a hypothetical question that did not include all of Plaintiff's limitations. Plaintiff asks the Court to reverse the Commissioner's decision and order an award of benefits or, alternatively, to reverse the decision and remand the case for further proceedings.

## BACKGROUND

**Work Record and Disability Forms**

Plaintiff's work history is not entirely clear from the record.  A Disability Report dated June 17, 2003, notes that Plaintiff worked part time as a cashier at a fast-food restaurant "1997-1998 -- 2001-2002." Tr. at 67.  On her Work History Report dated July 2, 2003, Plaintiff indicates that her past work included working as a cashier at a gas station from January 1997 to November 1999, and as an assembler at a factory from January 1999 to November 2000.  Tr. at 77-84.  Plaintiff's earnings records show earnings of approximately $6,500 in 1997; $6,600 in 1998; $14,300 in 1999; and minimal wages in 2000 through 2004.  Tr. at 56-57.

On her Claimant's Questionnaire, completed on July 3, 2003, Plaintiff wrote that her symptoms included numbness in her left leg and toes, problems standing for more than 10 to 15 minutes, problems bending or crouching, and an inability to lift more than ten pounds. She wrote that she was taking over-the-counter Aleve four to six times a day, and 500 mg. of Naproxene (Naprosyn - a nonsteroidal anti-inflammatory drug) twice daily for her pain, noting that when she could not afford her medications she was in "major pain." She testified that she did most of the household chores, but that it was very painful and took a lot longer than it used to. Plaintiff wrote that she drove a few blocks to the post office daily, and 13 miles weekly to do grocery shopping, with which she needed help. She also wrote that she took care of her children, cooking, feeding, bathing, and playing "real mild" with them. Tr. at 86-89.

On an undated form filed when Plaintiff requested the hearing before the ALJ, Plaintiff reported that she was taking Nabumatone (Relafen - a nonsteroidal anti-inflammatory drug), one to two times daily; Ultracet (a pain reliever used for short-term management of pain), one or two every five to six hours; and Skelaxin (a muscle relaxant), one every six hours. Tr. at 91. On a separate form dated March 5, 2004, Plaintiff wrote that she was currently taking Skelaxin, Naprosyn, and Lortabs (an opiate analgesic used for relief of moderate to moderately severe pain), and that in January 2004, she had been prescribed cortisone shots. Tr. at 93-94.

**Medical Record**

An MRI of Plaintiff's lumbar spine was performed on May 3, 2002, upon referral by a chiropractor due to Plaintiff's complaints of low back pain with bilateral leg pain. The MRI showed L5-S1 left paracentral disc herniation, with no other significant disc bulging or focal disc herniation. The scan also indicated bilateral facet joint effusions at the L5-S1 through L2-L3 levels. It was noted that "such minor facet effusions could be a source of low back and/or radicular type symptoms." Tr. at 96.

On May 10, 2002, Plaintiff presented to a hospital emergency room for treatment of her back problem. She reported that she had had back pain for three or four months, with some radiation and tingling in her left leg. A physical examination indicated intact touch in both lower extremities and straight leg raises with positive signs until "well past 60 degrees extension." The clinical impression was noted as lumbar radiculopathy (disorder of the spinal nerve roots, also referred to as sciatica). Plaintiff was prescribed Prednisone, 20 mg. twice a day, and a follow-up appointment with a neurosurgeon in seven days was arranged. Tr. at 101-02.

The next medical record regarding Plaintiff's back is dated November 5, 2002, when Plaintiff presented to the emergency room of a different hospital complaining of pain for two or three days in the flank area, and reporting a six-month history of back problems. A physical examination indicated pain on hip flexion/rotation. Reflexes and motor strength were normal. The clinical impression was noted as lumbar sprain, and Plaintiff was given prescriptions for Ibuprofen and Flexeril. Tr. at 114-17.

On August 5, 2003, Plaintiff was examined by Richard S. Collins, M.D., of Orthopaedic and Rheumatology, P.C. Plaintiff complained of low back pain and numbness and tingling in her left leg, and reported that the symptoms had begun in April 2002 and were continuing to get worse, mostly with standing and walking. Plaintiff was currently taking Naproxen. On examination, Dr. Collins noted that Plaintiff's gait and station were normal, and that she could toe, heel, and tandem walk without difficulty. Plaintiff's lumbar range of motion was limited by about 25% in all planes; hip, knee, and ankle ranges of motion were full, non-tender, and stable. Based upon his examination, x-rays taken that day, and the May 3, 2002 MRI, Dr. Collins assessed L5-S1 herniated disc with radiculopathy, with no progressive neurological deficit indicated. Dr. Collins recommended nonoperative measures first and contemplating surgery if those failed. Plaintiff was treated with physical therapy and prescribed Relafen, Ultracet, and Skelaxin, and was told to return in about six weeks. Tr. at 119-20.

The record contains no documentation of a return visit to Dr. Collins within this time frame, and the next medical record is from October 1, 2003, when Henry Petry, D.O., examined Plaintiff for a disability determination. Dr. Petry reported that Plaintiff had limited flexion-extension of the lumbar spine -- 40 degrees out of 90 degrees -- due to pain. Her lateral flexion was 20 degrees out of 25 degrees, and straight leg raisings were normal (90 degrees). Dr. Petry reported that Plaintiff was unable to squat and walk on her toes. He diagnosed low back pain and obesity, and opined that Plaintiff was not physically disabled as she was able to sit and do work, possibly needing retraining. Tr. at

121-27. On November 4, 2003, a state agency nonmedical employee determined that Plaintiff had the physical residual functional capacity (RFC) to perform medium work.[1] Tr. at 128-35.

At a follow-up visit to Dr. Collins on January 9, 2004, Plaintiff continued to complain of low back pain and some lower extremity radicular-type pain. Dr. Collins noted that Plaintiff had gone to physical therapy, resulting in some minimal and short-term improvement, and recommended that Plaintiff try lumbar epidural steroid injections. Dr. Collins signed a note stating that Plaintiff should be excused from work until February 20, 2004. Tr. at 146-47.

Treatment notes dated February 24, 2004, by J. Becker, D.O., state that Plaintiff had significant pain involving her hips and back, adding that manual therapy had only limited results, and that Plaintiff's morbid obesity was a contributing factor to her physical problems. Tr. at 143. Medical records from early March 2004 note Plaintiff's continuing problems, and on March 17, 2004, she underwent a surgical discectomy on the left L5-S1, with no complications. Tr. at 151. On a preoperative form, Plaintiff's occupation was listed as "housewife." Tr. at 154.

---

[1] Medium work involves lifting 50 pounds occasionally and 25 pounds frequently. 20 C.F.R. § 404.1567(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday . . . ." Social Security Ruling 83-10, 1983 WL 31251, at *6.

**<u>Evidentiary Hearing</u>**

The evidentiary hearing took place on May 11, 2004, less than two months after Plaintiff's surgery. Plaintiff, who was represented by counsel, testified that she was 28 years old; was separated from her husband for a little over two years (since March 2002); lived with her four children, ages ten, eight, seven, and six; was 5' 8" tall; weighed 264 pounds; and had completed high school. She testified that from May 2002 when she ruptured a disc, up to March 2004 when she underwent the discectomy, her left leg would feel numb and she had pain in her knees and on both sides through the lower back. As a result, she had difficulty walking and sitting. She testified that since the surgery her condition improved a "little." She no longer had as much pain in her lower back and legs, but still felt pain when she would get up from a sitting or lying position. Plaintiff testified that she was taking Lortabs, one or two tablets a day depending upon how bad the pain was that day. Tr. at 169-74.

Plaintiff stated that she was now able to ride in a car comfortably for about 30 minutes, and that she was still in the healing process. Before her surgery, when she went grocery shopping, she would have to stop pushing the cart every five to ten minutes to relax her back. After the surgery, she could go 20 to 25 minutes without stopping to relax her back. Plaintiff testified that even after her surgery she had trouble bending, and that her mother, who came over daily, and oldest child helped with the laundry. Plaintiff testified that sometimes she needed help getting dressed. Tr. at 174-76.

Plaintiff testified that on a typical day, she would get up at 6:30 a.m. to get her children ready for school by helping them pick out their clothes. Plaintiff's mother helped prepare suppers; Plaintiff herself could prepare simple meals. When asked if she attended any clubs or meetings, Plaintiff responded, "Not yet." She testified that generally she could sit for 20 to 30 minutes, stand for 15 minutes, and walk for 25 to 35 minutes before she felt pain. She further stated that, as she was "still after surgery," she was restricted to lifting either five or ten pounds. Plaintiff stated that she worked some days in 2003 at temporary jobs on a daily basis, because she "had to get stuff for the kids," but that it was hard on her -- on the day after she worked, she would have severe back pain and leg cramping. Tr. at 178-82.

Upon questioning by the ALJ, Plaintiff testified that she could work at a job that did not require her to lift more than ten pounds if she could alternate between sitting and standing all day. She testified that before her surgery, she would not have been able to do such work, because her back pain and leg cramping were worse then, and even alternating between sitting and standing did not relieve her symptoms. Tr. at 189-90.

A vocational expert was asked to assume an individual of Plaintiff's age, education, and work history, who would be limited to carrying five pounds frequently and ten pounds occasionally; would need to alternate between sitting and standing during the workday; could not work at heights; and would be limited to crouch, crawl, kneel, stoop, climb only occasionally. The vocational expert testified that such an individual could not perform the tasks of a cashier's job, which required standing all day, but could perform a

semiskilled sedentary cashier's job, as well as other sedentary semiskilled jobs such as assembler or fabricator, surveillance system monitor, and packer, and that these jobs existed in significant numbers on the national and local levels. Tr. at 192-97.

Plaintiff's counsel then elicited testimony from Plaintiff that she could not sit upright but had to bend forward and lean on a table with her elbows, with her legs extended forward or to the side. She testified that seated like that, she could work with her hands at a table for about 15 minutes before her arms would "give out" and she would have to take a 15 or 20 minute break. Tr. at 197-98. The vocational expert testified that the need to sit in the position described by Plaintiff would eliminate all the jobs she had identified previously. Tr. at 198.

**ALJ's Decision**

The ALJ first found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, and that she was insured for disability benefits through December 2004. He found that Plaintiff suffered from lumbar spondylosis (disc degeneration), a herniated disc, and obesity. He further found that these impairments were severe, but did not individually or in combination meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Appendix 1). Specifically, the ALJ stated that Listing 1.04 (Disorders of the spine) was not met because Plaintiff had no motor or sensory loss, even taking into account her obesity.[2] Tr. at 17.

---

[2] The Court notes that obesity was deleted from the Commissioner's Listing of Impairments, effective October 25, 1999. 64 Fed. Reg. 46122 (1999). Obesity remains a factor to be considered by the ALJ in making a disability determination. Social Security

The ALJ then reviewed the medical record and the Plaintiff's testimony at the hearing and found that, except for a short period around the time of Plaintiff's back surgery, she had the RFC to perform sedentary work with the following restrictions: she needed to be able to alternate between sitting/standing/walking at will; avoid heights; and climb, balance, stoop, kneel, crouch, and crawl only occasionally. The ALJ noted that this RFC was consistent with Dr. Petry's October 1, 2003 opinion, and that except for Dr. Collins' January 9, 2004 letter which stated that Plaintiff should be excused from work until February 20, 2004, no treating physician ever addressed any work limitations. Tr. at 17-19.

The ALJ found that Plaintiff's testimony of limitations greater than those accounted for in the above RFC for any continuous 12-month period was not credible for several reasons. The ALJ first pointed to the lack of evidence of ongoing treatment for pain from May 2002 to August 2003, and from August 2003 to January 2004, other than some therapy during the latter period. The ALJ specifically noted that Plaintiff did not return to see Dr. Collins in September 2003 as instructed. Tr. at 19.

The ALJ also held that Plaintiff's activities of daily living, although limited, did not support a finding that she had been precluded from all types of work for a 12-month period. The ALJ pointed to Plaintiff's testimony that she took care of her four children, "albeit with her mother's help," and Plaintiff's statement on the July 3, 2003 form that she

---

Ruling 00-3p (May 15, 2000) ("Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.").

fed, bathed, and played with her children. The ALJ then stated that Plaintiff's sparse work history may indicate a lack of motivation, rather than a lack of ability, to work. The ALJ discounted the state agency employee's RFC assessment that Plaintiff could perform medium work, and found that Plaintiff was not able to return to her past work as a production assembler and cashier. Tr. at 19.

The ALJ credited the vocational expert's testimony that an individual with an RFC as assessed by the ALJ, and with Plaintiff's vocational factors (age, education, and work experience), could perform the sedentary unskilled jobs of assembler, surveillance monitor order clerk, and packer; and that such jobs existed in significant numbers nationally and regionally. Accordingly, the ALJ found that Plaintiff was not disabled as defined by the SSA. Tr. at 19-20.

As stated above, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony at the hearing regarding her pain, and as a result, improperly relied upon the vocational expert's answer to a hypothetical question that did not include all of Plaintiff's limitations. Plaintiff asks the Court to reverse the Commissioner's decision and order an award of benefits, or alternatively, to reverse the decision and remand the case for further proceedings.

# DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . the court must also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). If after reviewing the record, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

In order to qualify for Social Security disability benefits, a person must demonstrate an inability to engage in any substantial gainful activity by reason of a

medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both the impairment and the inability to engage in substantial gainful employment must last, or be expected to last, not less than 12 months).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, disability benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment (or combination of impairments), defined in 20 C.F.R. § 404.1520(c)[3] as an impairment which significantly limits a claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, the disability claim is denied. If the impairment is severe, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in Appendix 1.

If the claimant's impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled. If the impairment is one that does not meet or equal a listed impairment, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant is able to perform his past relevant work, he is not disabled. If he cannot perform his past relevant work, step five

---

[3] As is the general convention, references to relevant regulatory provisions in the ALJ's decisions and this Report and Recommendation are to those appearing under the SSA's program for disability insurance benefits rather that SSI benefits. The provisions are identical under both programs.

asks whether the claimant has the RFC to perform work in the national economy in view of his vocational factors, i.e., his age, education, and work experience. If not, the claimant is declared disabled and is entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)-(f); <u>Fastner v. Barnhart</u>, 324 F.3d 981, 983-84 (8th Cir. 2003); <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001).

At step five, the burden is upon the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with his vocational factors. <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998). Where a claimant cannot perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's Guidelines (20 C.F.R. Pt. 404, Subpt. P, App. 2) due to nonexertional impairments such as pain, the ALJ cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony by a vocational expert. <u>Id.</u>; <u>Wilcutts v. Apfel</u>, 143 F.3d 1134, 1137 (8th Cir. 1998). The response of a vocational expert to a hypothetical question that includes all of a claimant's impairments properly accepted as true by the ALJ constitutes substantial evidence to support a conclusion of no disability at step five. <u>Hunt v. Massanari</u>, 250 F.3d 622, 625 (8th Cir. 2001).

Here, the ALJ concluded at step two that Plaintiff's back problem and obesity were severe impairments. At step three the ALJ concluded that these impairments did not meet or equal a listed impairment. The ALJ then concluded at step four that Plaintiff was

unable to perform her past relevant work. At step five the ALJ concluded, based upon the testimony of the vocational expert, that Plaintiff was capable of performing other work in the economy and was, thus, not disabled.

## ALJ's Discrediting Plaintiff's Allegations of Disabling Pain

In assessing Plaintiff's RFC, the ALJ discounted the full extent of symptoms alleged by Plaintiff. In <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984), the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." <u>Id.</u> at 1322. Other factors include "observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the frequency, duration, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." <u>Id.</u> The Eighth Circuit has also held that after considering the <u>Polaski</u> factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that caused him to reject the claimant's complaints. <u>Baker v. Apfel</u>, 159 F.3d 1140, 1144 (8th Cir. 1998). "The decision of an ALJ who seriously considered, but for good cause expressly discredits a claimant's subjective complaints . . . is not to be disturbed." <u>Haggard v. Apfel</u>, 175 F.3d 591, 594 (8th Cir. 1999).

In many disability cases, there is no doubt that the Plaintiff experiences pain; "the real issue is how severe that pain is." <u>Sampson v. Apfel</u>, 165 F.3d 616, 619 (8th Cir.

15

1999). Here, the fact that Plaintiff only sought sporadic medical treatment for her pain, and apparently even missed appointments with doctors, was a valid factor for the ALJ to take into account. The ALJ omitted reference to Plaintiff's visit to the emergency room on November 5, 2002, in stating that she sought no treatment from May 2002 (when she visited the emergency room) until August 2003 (when she saw Dr. Collins). Nevertheless, there remain six months from May 2002 to November 2002, and nine months between November 2002 and her August 5, 2003 visit to Dr. Collins, during which there is no documentation of medical contact or treatment. See, e.g., Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (failure to seek medical treatment for back on a regular basis supported ALJ's discrediting subjective complaints of disabling back pain).

Plaintiff's daily activities were also a proper basis for the ALJ to discredit the extent of pain and limitations alleged by Plaintiff. The ALJ properly relied upon Plaintiff's ability to take care of her four young children, even considering her mother's assistance. Plaintiff's mother did not live with Plaintiff, and Plaintiff testified that she got her four children off to school in the mornings. As the ALJ noted, Plaintiff wrote on the July 3, 2003 Claimant's Questionnaire that she (Plaintiff) fed, bathed, and played with her children. Although Plaintiff indicated on the Questionnaire that these tasks took her longer than in the past, and that she only engaged in mild play with her children, it was reasonable for the ALJ to find that Plaintiff's managing a household with four young children, even with some help, was inconsistent with her subjective complaints of

16

disabling pain. See Haley, 258 F.3d at 748 (plaintiff's complaints of disabling pain were inconsistent with his statements that he took care of his personal needs, did some household chores, shopped, drove, visited friends and relatives, and attended church twice a week); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discounting of claimant's subjective complaints of disabling pain due to bulging discs in his lower back where claimant was able to care for one of his children on daily basis, drive car infrequently, and go grocery shopping occasionally).

Another factor taken into consideration by the ALJ was Plaintiff's sparse work record. While a disability claimant's poor work record is not dispositive, it is a valid factor for an ALJ to consider in conjunction with other factors, such as daily activities, in discrediting the extent of a claimant's subjective complaints of pain. Ramirez v. Barnhart, 292 F.3d 576, 581 & n.4 (8th Cir. 2002). The ALJ also noted Dr. Collins' January 9, 2004 letter that Plaintiff should be excused from work for only six weeks, and that no other treating physician set any work limitations on Plaintiff. This is another factor supporting the ALJ's discrediting of Plaintiff's subjective allegations of disabling pain for a 12-month period. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (finding it significant that no physician who examined claimant submitted a medical conclusion that she was unable to work); Smith, 987 F.2d at 1374 (same).

In sum, the Court concludes that the ALJ was entitled to discredit the extent of pain alleged by Plaintiff, and to find that her pain did not preclude all work for any 12-

month period, and that the hypothetical question posed to the vocational expert included all of Plaintiff's impairments properly accepted as true by the ALJ.

## **CONCLUSION**

The Commissioner met her burden of proving that Plaintiff had the RFC to perform jobs that exist in the national economy. Substantial evidence supports the ALJ's decision that while Plaintiff experienced some pain and limitations, she was not disabled within the meaning of the Social Security Act.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed.

The parties are advised they have ten days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 21st day of December, 2005.